## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CYNTHIA HRICENAK,

      Plaintiff,

    v.

MICKEY TRUCK BODIES,

      Defendant.

No. 4:21-CV-00694

(Chief Judge Brann)

### MEMORANDUM OPINION

### APRIL 12, 2024

Approximately ten-million passenger cars and commercial vehicles are produced in the United States each year.[1] With a long, storied history, the automobile industry now supports approximately a million well-paying jobs and countless small businesses.[2] Despite this importance to the national economy, motor vehicle manufacturers are not above the law. Like other employers, they remain subject to the prohibitions against discrimination provided by Title VII of the Civil Rights Act of 1964.

---

[1] *See Annual U.S. Motor Vehicle Production and Domestic Sales*, BUREAU OF TRANSP. STATISTICS, https://www.bts.gov/content/annual-us-motor-vehicle-production-and-factory-wholesale-sales-thousands-units (last visited April 1, 2024).

[2] *See Automotive Industry: Employment, Earnings, and Hours*, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/iag/tgs/iagauto.htm (last visited April 1, 2024).

## I.      BACKGROUND

On March 31, 2022, Plaintiff, Cynthia Hricenak, filed an Amended Complaint against Defendant, Mickey Truck Bodies.[3] Currently pending before the Court are Defendant's Motion for Summary Judgment and Motion to Strike the Plaintiff's Responses to Defendant's Statement of Facts.[4] The motions are now ripe for disposition; for the reasons that follow, the motion for summary judgment is granted in part and denied in part, and the motion to strike is denied as moot.

## II.     DISCUSSION

### A.      Motion for Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[6] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[7] Conversely, to survive summary judgment, a plaintiff must

---

3   *See* Doc. 16 (Amended Compl.).
4   *See* Doc. 41 (Motion for Summary Judgment); Doc. 55 (Motion to Strike).
5   FED. R. CIV. P. 56(a).
6   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
7   *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).

"point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[8]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[9] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[10] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[11] Finally, although "the court need consider only the cited materials, … it may consider other materials in the record."[12]

## B.   Self-Serving Affidavits and Deposition Testimony

It is well-established that "[c]onclusory, self-serving affidavits and deposition testimony are insufficient to withstand a motion for summary judgment."[13] "However, the issue is not whether [a party] has relied solely on [their] own testimony to challenge the Motion[], but whether [their] testimony,

---

[8]  *Id.*

[9]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (citing *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[10]  *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[11]  FED. R. CIV. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[12]  FED. R. CIV. P. 56(c)(3).

[13]  *Doe v. Pa. State Univ.*, No. 4:21-CV-01862, 2023 U.S. Dist. LEXIS 198333, at *10 (M.D. Pa. Nov. 3, 2023) (citing *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012)).

when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit [their] testimony, despite its self-serving nature."[14]

Mickey Truck Bodies repeatedly urges the Court to disregard Hricenak's deposition testimony.[15] Although Plaintiff's testimony is occasionally vague, it provides "sufficient detail on a few key points and, apart from" an equally self-serving affidavit from Mickey Truck Bodies Chief Executive Officer, Matthew Sink, Plaintiff's testimony is "not 'blatantly contradicted' by the other record evidence."[16] Therefore, to the extent that it is admissible, I will consider Plaintiff's testimony.

### C.    Federal Rule of Evidence 801

After the Court granted Plaintiff leave to amend its Response to Defendant's Statement of Material Facts, Mickey Truck Bodies proceeded to object, at length, to the entirety of Plaintiff's Counterstatement of Facts. For the sake of simplicity, the Court first considers Mickey Truck Bodies' evidentiary objections before reciting the relevant facts. Defendant objects to Paragraphs 8, 28, 33, 38, 39, 41, 43, 46, 47, 51, 52, 53, 55, 57, and 58 ("the Challenged Paragraphs") as inadmissible hearsay. Federal Rule of Evidence 801(d)(2)(D) "provides that a

---

[14]   *Johnson*, 883 F. Supp. 2d at 549 (citing *Gonzalez v. Sec'y of Dept of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012)).

[15]   *See* Doc. 64 (Response to Plaintiff's Counterstatement of Facts).

[16]   *Hattabaugh v. TMS Int'l, LLC*, No. 2:20-CV-00801-CCW, 2022 U.S. Dist. LEXIS 138551, at *13 (W.D. Pa. Aug. 4, 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 686 (2007)).

statement is not hearsay if it is offered against an opposing party and 'made by the party's agent or employee on a matter within the scope of that relationship and while it existed.'"[17] After a thorough review of the deposition transcripts, the Court concludes that the Challenged Paragraphs are admissible party opponent statements under Rule 801(d)(2)(D) for purposes of this Motion. So long as they are not otherwise contradicted by the record, the relevant, non-conclusory aspects of the Challenged Paragraphs will be considered.

### D.   Factual Background

#### 1.   Headquarters

Mickey Truck Bodies is headquartered in High Point, North Carolina and opened a plant in Berwick, Pennsylvania in October 2017.[18]

#### 2.   Employment History of Hricenak and the Plant Managers

Mickey Truck Bodies hired Plaintiff as an Office Administrator for the Berwick Plant on September 25, 2017 at the rate of $16.00 an hour.[19] Her application only included relevant experience to this position from the last ten

---

[17]   *Mathis v. Monza*, Civ. A. No. 11-450, 2013 U.S. Dist. LEXIS 35158, at *8 (W.D. Pa. Mar. 14, 2013) (quoting FED. R. EVID. 801(d)(2)(D)).

[18]   *See* Doc. 43 (Defendant's Statement of Material Facts) ¶¶ 1, 6.

[19]   *See id.* ¶ 14.

years.[20] She was promoted to a salaried position of $65,000 in February 2018.[21] She then received a standard 1.5% raise in April 2019.[22]

Earlier in September 2017, Defendant had hired Ryan Romberger to be the first Berwick Plant Manager at a salary of $75,000.[23] Romberger had an associates degree, five years of manufacturing experience, and experience as a production supervisor.[24] Defendant swiftly terminated Romberger on October 3, 2017.[25]

Jon Faust was then hired as the second Plant Manager on October 30, 2017 at a salary of $85,000.[26] Faust had two advanced degrees, two years of service as a Company Commander in the United States Army Reserves, and experience as a production supervisor.[27] Since Plaintiff performed many of his job responsibilities,[28] Faust was terminated for poor performance on February 16, 2018.[29] His termination paperwork labeled him as "Supervisor."[30]

Shortly after Faust was fired, Hricenak was "transitioned into the Supervisor role for" the Berwick Plant.[31] At a salary of $65,000, this put her "in the range [of]

---

20  *See id.* ¶¶ 7-8.
21  *See id.* ¶¶ 14, 32.
22  *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 1 (Plaintiff's Oct. 17, 2023 Dep. Transcript) at 149:25-150:1.
23  *See* Doc. 43 (Defendant's Statement of Material Facts) ¶ 16.
24  *See id.* ¶ 17.
25  *See id.* ¶ 18.
26  *See id.* ¶ 23.
27  *See id.* ¶ 24.
28  *See* Doc. 60 (Amended Answer to Statement of Facts), Ex. C. (Feb. 11, 2018 Email Correspondence).
29  *See id.*, Ex. B (Faust Termination Notice).
30  *Id.*
31  Doc. 43 (Defendant's Statement of Material Facts), Ex. I (Plaintiff's Wage Form).

a Production Supervisor."[32] At Mickey Truck Bodies, production supervisors run "just the one side of the shop."[33] During this same period, Hricenak asserts that Dana Layne, Defendant's first Human Resources Director, offered her the Plant Manager position.[34] Until May 2018, Plaintiff ran the Berwick Plant with assistance from High Point.[35]

Defendant then hired David Bohannon on April 30, 2018 at a salary of $70,000.[36] His offer letter designated him as "Production Supervisor,"[37] but "[t]he team at Berwick" had been told "he was in charge."[38] Bohannon had previously worked as a production supervisor for several years.[39] Josh Reed, Defendant's Director of Manufacturing Operations, required Hricenak to train Bohannon and

---

[32]  *Id.*

[33]  *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 1 (Plaintiff's Oct. 17, 2023 Dep. Transcript) at 68:12-14.

[34]  Defendant asserts this was merely Plaintiff's "belief" or "claim." *See* Doc. 64 (Defendant's Response to Counterstatement of Facts) ¶ 8. However, it is not merely a "belief" or "claim" as it is corroborated by other evidence in the record. Matthew Sink's Affidavit is what it is, but his assertions are uncorroborated. David Bohannon's employment application and offer letter are for the position of "Production Supervisor," the role purportedly filled by Hricenak at this time. *See* Doc. 61 (Counterstatement of Facts), Ex. D (Bohannon Offer Letter) and Ex. E (Bohannon Application). Further, Plaintiff's promotion paperwork elevated her to "the Supervisor role for our PA facility." *See* Doc. 43 (Defendant's Statement of Material Facts), Ex. I (Plaintiff's Wage Form). This notably coincides with Faust's termination paperwork labeling him as "Supervisor." *See* Doc. 61 (Counterstatement of Facts), Ex. B (Faust Termination Notice).

[35]  *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript) at 100:10-25.

[36]  *See* Doc. 61 (Counterstatement of Facts), Ex. D (Bohannon Offer Letter).

[37]  *Id.*

[38]  Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript) at 108:14-16.

[39]  *See* Doc. 43 (Defendant's Statement of Material Facts) ¶¶ 38-39.

report to him.[40] But Reed "put [her] back in charge" in September 2018, shortly before Bohannon was terminated.[41]

By January 2019, Plaintiff reported directly to Reed as Berwick's "Plant Supervisor."[42] It is unclear when Defendant transitioned Hricenak out of this role, but Mickey Truck Bodies then hired Kevin Turpin as Plant Manager in July 2019 at a salary of $105,000.[43] Turpin had two advanced degrees, over twenty years of military service, and project engineering experience.[44]

On September 10, 2019, Defendant terminated Hricenak as a "Logistics Supervisor" due to the elimination of that position.[45]

### 3.   Discrimination and Harassment Hricenak Faced at the Berwick Plant

Over the course of her employment with Mickey Truck Bodies, Hricenak contends that she faced discrimination and harassment due to her sex.

---

[40]   *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript) at 100:24-101:2. Her promotion paperwork, Faust's termination paperwork, and Bohannon's employment application and offer letter corroborate this assertion. *See* Doc. 61 (Counterstatement of Facts), Ex. B (Faust Termination Notice), Ex. D (Bohannon Offer Letter) and Ex. E (Bohannan Application); Doc. 43 (Defendant's Statement of Material Facts), Ex. I (Plaintiff's Wage Form).

[41]   *See id.* at 108:20-23. Again, this is not conclusory; it is supported by the January 2019 organizational chart. *See* 61 (Counterstatement of Facts), Ex. G (Mickey Truck Bodies Organization Chart – January 2019).

[42]   *See id.*

[43]   *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 1 (Plaintiff's Oct. 17, 2023 Dep. Transcript) at 100:22-24.

[44]   *See* Doc. 43 (Defendant's Statement of Material Facts) ¶ 49.

[45]   *See id.*, Ex. O (Plaintiff's Termination Form).

### a.    Hricenak is Denied Assistance and Benefits

Hricenak identified several instances where Defendant did not provide her with assistance that male Plant Managers received. Upon his hire, Bohannon received a laptop.[46] Only after Bohannon's termination did Mickey Truck Bodies provide Hricenak with a laptop.[47] The male Plant Managers also immediately attended in-person training in High Point.[48] Plaintiff waited five months to do so.[49] Finally, Hricenak had only part-time administrative assistance,[50] no human resources or quality control assistance,[51] and no leadman for several months.[52]

### b.    Hricenak's Treatment by Management

#### i.    Matthew Sink[53]

Sink canceled a business lunch with Plaintiff despite meeting with male managers[54] and told Plaintiff to be the "friendly face" of Berwick.[55]

---

[46]  *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 1 (Plaintiff's Oct. 17, 2023 Dep. Transcript) at 14:14-24.

[47]  *See id.* at 99:11-14.

[48]  *See id.* at 201:24-202:2.

[49]  *See id.*

[50]  *See id.* at 14:14-19, 163:9-16.

[51]  *See id.* at 182:3-13; Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 2 (Plaintiff's Nov. 10, 2023 Dep. Transcript) at 113:9-12.

[52]  *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 2 (Plaintiff's Nov. 10, 2023 Dep. Transcript) at 113:17-18.

[53]  Plaintiff identified two more incidents that, even when viewed in a light most favorable to her, could not be found to be discriminatory by a reasonable juror. At a maintenance meeting, Sink inquired why Plaintiff was in attendance as she was not previously scheduled to attend, and Sink was not involved in denying Hricenak a long weekend when she was in charge of Berwick. *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 1 (Plaintiff's Oct. 17, 2023 Dep. Transcript) at 193:10-25, 201:11-19, 203:5-24.

[54]  *See id.* at 200:5-19.

[55]  *Id.* at 161:6-10.

### ii.    Josh Reed[56]

Reed told Hricenak that she "mommi[es]" and "bab[ies]" the shop employees[57] and instructed her to avoid socializing with non-management employees.[58] When placing Plaintiff "back in charge" after Bohannon's tenure as Plant Manager, he declined to give her a raise without any explanation.[59]

### iii.    Melanie Weber[60]

Melanie Weber, the final Human Resources Director, told Hricenak that it is "unheard of" to have a woman out on the shop floor.[61]

### iv.    Josh Soto[62]

When Bohannon was Plant Manager, Josh Soto, Defendant's Safety, Environmental, and Health Manager, told Plaintiff that Bohannon should bring injured employees to the hospital, not her, as whoever did so could "get hurt."[63]

---

[56]  Plaintiff also identified Reed's failure to pay out a weekly bonus system as discriminatory. However, the bonus system was never set up. *See id.* at 133:13-19. Reed's comment about the dress code does not implicate Plaintiff's sex, even when viewed most favorably to her. *See id.* at 13:23-14:4.

[57]  *Id.* at 123:12-20.

[58]  *See id.* at 131:15-18.

[59]  *Id.* at 15:23-16:10.

[60]  Weber told the shop employees they no longer needed to listen to Plaintiff as she was not "part of the team" once Turpin had been hired; given Hricenak had become "Logistics Supervisor," this comment does not implicate her sex, even when viewed in a light most favorable to her. *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 2 (Plaintiff's Nov. 10, 2023 Dep. Transcript) at 110:24-111:3; Doc. 43 (Defendant's Statement of Material Facts, Ex. O (Plaintiff's Termination Form).

[61]  *Id.* at 113:25-114:1.

[62]  Soto also directed plant employees to not attend work one Saturday because a supervisor would not be present. *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 2 (Plaintiff's Nov. 10, 2023 Dep. Transcript) at 14:4-15:19. Even when viewed in a light most favorable to Plaintiff, this event did not involve her sex.

### v.     Kevin Turpin[64]

Kevin Turpin yelled at Hricenak about contacting a vending machine company;[65] choosing a replacement employee;[66] failing to update a planner;[67] and knowing the company's employment policies.[68] The replacement employee confrontation became particularly heated as Turpin turned "extremely red," began to breath heavily, and "bang[ed] his head down off the table …."[69] Hricenak never observed Turpin yell at male employees.[70] Finally, Turpin forbade Plaintiff and the Berwick leadman from bringing their problems to one another.[71] During that meeting, he stood above Hricenak "with his hands on the table looking down at" her.[72]

---

63  Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 1 (Plaintiff's Oct. 25, 2023 Dep. Transcript) at 199:2-6. Hricenak also identified Bohannon's use of a warehouse as discriminatory. *See id.* at 178:1-11. Based on Plaintiff's testimony, this did not occur due to her sex, even when viewed most favorably to Plaintiff.

64  Turpin also attempted to make Plaintiff work one Saturday. Again, even when viewed most favorably to Plaintiff, nothing indicates this occurred because of her sex. *See id.* at 16:16-24.

65  *See id.* at 17:8-18:6.

66  *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 2 (Plaintiff's Nov. 10, 2023 Dep. Transcript) at 44:19-46:11.

67  *See id.* at 35:10-15.

68  *See id.* at 110:1-8.

69  *Id.* at 45:19-46:8.

70  *See id.* at 43:7-8; 63:18-22.

71  *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 1 (Plaintiff's Oct. 25, 2023 Dep. Transcript) at 188:5-12.

72  *See id.* at 189:17-23.

### c.   Employment Reviews and Raises

Mickey Truck Bodies reviews its employees in February and August.[73] Hricenak was ineligible for a review in February 2018 concerning her new supervisory role.[74] Any review requested in May 2018 would have been outside the standard review period.[75] Plaintiff did not receive a review in Fall 2018 because she was not receiving a raise.[76] Hricenak did not receive a review in February 2019 without explanation.[77] Defendant terminated Plaintiff before her request for a review in September 2019 could be completed.[78]

### E.   Analysis

#### 1.   Motion to Strike

Since Plaintiff was granted leave to amend her response to Defendant's Material Statement of Facts,[79] the Motion to Strike is denied as moot.

#### 2.   Title VII Sex Discrimination Claim

"Pursuant to Title VII, it is 'an unlawful employment practice for an employer … to discriminate against any individual with respect to his

---

[73] *See* Doc. 43 (Defendant's Statement of Material Facts), Ex. A (Sink Affidavit) ¶ 31.

[74] *Id.* ¶ 32.

[75] *Id.* ¶ 31.

[76] *See id.* ¶ 35. Defendant contends that a August 2018 review would not have been granted due to her promotion in February 2018. *See id.* ¶ 31.  Defendant's sole citation in support of this contention is Sink's self-serving affidavit. Given the lack of any other evidentiary support, the Court does not deem this fact admitted when faced with the uncorroborated departure from Company policy.

[77] *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 1 (Plaintiff's Oct. 25, 2023 Dep. Transcript) at 148:8-20.

[78] *See id.* at 149:14-16.

[79] *See* Doc. 59 (Ord. Granting Motion for Leave to Amend).

compensation, terms, conditions, or privileges of employment because of such individual['s]'" sex.[80] The "familiar analytical framework first pronounced in *McDonnell Douglas Corp. v. Green*" guides this Court's analysis.[81] "Accordingly, [Hricenak] has the initial burden of establishing a *prima facie* case of unlawful discrimination."[82] If she "establishes a prima facie case, '[t]he burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the'" adverse employment decision.[83] "If a defendant satisfies this burden, a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[84]

### a.    Prima Facie Case

Hricenak "must show that: (1) she was a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment

---

[80]   *Fennell v. Comcast Cable Commc'ns Mgmt., LLC*, 628 F. Supp. 3d 554, 571 (E.D. Pa. 2022) (quoting 42 U.S.C. § 2000e-2).
[81]   *Olson v. GE Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996).
[82]   *Id.*
[83]   *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000) (quoting *Showalter v. Univ. of Pittsburgh Medical Ctr.*, 190 F.3d 231, 235 (3d Cir. 1999)).
[84]   *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997)).

action; and (4) similarly situated employees of the opposite sex were treated more favorably."[85]

### i.    The First Three Elements

It is undisputed that Hricenak is a member of a protected class, and a reasonable juror could also conclude that she satisfactorily performed her job. Her work performance was "average" and she was only terminated due to the elimination of her position.[86] Finally, Plaintiff's salary is the relevant adverse employment action.

### ii.    The Fourth Element

"The fourth element's inference of discrimination requirement can be established 'in a number of ways.'"[87] "Discrimination may be inferred based on comparator evidence—evidence that [the] defendant treated 'similarly situated' individuals not within plaintiff's protected class more favorably than it treated [the] plaintiff."[88] "Typically there must also be evidence that the employees 'were subject to the same standards and compensation scheme, or had comparable

---

[85]  *Summy-Long v. Pa. State Univ.*, 226 F. Supp. 3d 371, 395 (M.D. Pa. 2016).

[86]  *See* Doc. 43 (Defendant's Statement of Material Facts), Ex. O (Plaintiff's Termination Form).

[87]  *Fennell,* 628 F. Supp. 3d at 572 (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010)).

[88]  *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (citing *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881 (3d Cir. 2011)).

experience, education, or qualifications.'"[89] Hricenak proposes the four Mickey Truck Bodies Plant Managers as her comparators.

Plaintiff would not have held the same title or, in most instances, duties at the same time as the proposed comparators as there is only one Plant Manager at the Berwick Plant at a time. For this reason, the Court finds Defendant's objection based on this premise to be unpersuasive. Even if this objection was persuasive, there is a genuine dispute as to whether Hricenak performed most of Faust's duties while he was Plant Manager.[90] The comparators and Plaintiff were also "subject[ed] to the same standards and compensation scheme" despite having varied professional backgrounds.[91] They are therefore appropriately similarly situated for this analysis.

Finally, Mickey Truck Bodies' reliance on the lack of promotion paperwork is also unpersuasive. There is no paperwork indicating Hricenak became Plant Supervisor, despite Defendant identifying her as such in an official organizational chart, or Logistics Supervisor, the title on her termination form.[92] Substantial inconsistencies also exist regarding Faust's and Bohannon's paperwork.[93] A

---

[89]  *Reid v. Wal-Mart Stores, Inc.*, 274 F. Supp. 3d 817, 823 (N.D. Ill. 2017) (quoting *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 810 (7th Cir. 2014)).

[90]  *See* Doc. 61 (Counterstatement of Facts), Ex. C (Feb. 11, 2018 Email).

[91]  *Reid*, 274 F. Supp. 3d at 823.

[92]  *See* Doc. 61 (Counterstatement of Facts), Ex. G (Mickey Truck Bodies Organization Chart – Jan. 2019); Doc. 43 (Defendant's Statement of Material Facts), Ex. O (Plaintiff's Termination Form).

[93]  *See* Doc. 61 (Counterstatement of Facts), Ex. A (Faust Offer Letter), Ex. B (Faust Termination Notice), Ex. D (Bohannon Offer Letter), Ex. E (Bohannon Application).

reasonable juror could therefore conclude that Hricenak properly identified four male comparators, each of whom earned more than her.

### b.      Defendant's Nondiscriminatory Reason

According to Mickey Truck Bodies, each Plant Manager was appropriately compensated based on each individual's unique qualifications.[94] To justify Plaintiff's lower compensation, Defendant points to her lack of an advanced degree and production supervisory experience.[95] This adequately "'support[s] a finding that the defendant had a legitimate, nondiscriminatory reason for the'" difference in pay.[96]

### c.      Pretext

"In order to show pretext, a plaintiff must submit evidence which (1) casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the" adverse employment action.[97] For the first prong, Hricenak has "the burden to 'demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

---

[94]   *See* Doc. 42 (Brief in Support of Motion for Summary Judgment) at 24.

[95]   *See id.* at 24-25. *See also Martinelli v. Penn Millers Ins. Co.*, No. 3:CV-02-2292, 2005 U.S. Dist. LEXIS 36694, (M.D. Pa. Aug. 29, 2005) (Vanaskie, J.) (citing *Best v. Janerich*, 80 F. Supp. 2d 334, 337 (M.D. Pa. 1999)) ("The nature and quality of experience has to be considered").

[96]   *Stanziale*, 200 F.3d at 105 (quoting *Showalter*, 190 F.3d at 235).

[97]   *Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 370 (3d Cir. 2008) (citing *Fuentes*, 32 F.3d at 764).

legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.'"[98] Alternatively, "to show the discriminatory reason was more likely than not the motivating reason, a plaintiff can introduce evidence of the employer's past treatment of her, or evidence of the employer's general policy and practice with respect to minority employees."[99]

To demonstrate pretext, Plaintiff argues that the dispute regarding what position she held and the identification of the comparators "would allow a jury to disbelieve Defendant's claim that it paid Plaintiff less because she had a different job title and was less qualified than her male counterparts."[100] This argument fails to rebut the purported reason for her lower pay under the first prong.

Consequently, the Court must evaluate Mickey Truck Bodies' past treatment of Plaintiff. Hricenak concludes that certain interactions occurred only because she was a woman, but this subjective belief alone is insufficient.[101] "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are [also] rarely given great weight, particularly if they were made temporally remote from the date of the decision."[102] A number of the incidents brought to the Court's

---

[98] *Steele v. Pelmor Labs. Inc.*, 642 F. App'x 129, 134 (3d Cir. 2016) (quoting *Fuentes*, 32 F.3d at 764) (emphasis excluded).

[99] *Martin v. Health Care & Ret. Corp.*, 67 F. App'x 109, 112 (3d Cir. 2003) (citing *Ezold v. Wolf, Block, Shorr & Solis-Cohen*, 983 F.2d 509, 523-24 (3d Cir. 1992)).

[100] Doc. 49 (Brief in Opposition to Motion for Summary Judgment) at 13.

[101] *See e.g.*, *Jones v. Sch. Dist.*, 198 F.3d 403, 414 (3d Cir. 1999); *Ade v. KidsPeace Corp.*, 401 F. App'x 697, 703 (3d Cir. 2010).

[102] *Ezold*, 983 F.2d at 545 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J. concurring)).

attention will not be afforded much weight as they are not discriminatory when viewed in a light most favorable to Plaintiff; involved non-relevant decisionmakers; or are unrelated to "the decision process" concerning her pay or promotion.[103] Although certain incidents could allow a reasonable juror to conclude that members of Defendant's upper management team possessed a discriminatory animus,[104] it is a close issue. The Court resolves this close question in favor of the non-moving party given the existence of material questions of fact. Defendant's motion for summary judgment is therefore denied as to Plaintiff's Title VII sex discrimination claim.

### 3. Hostile Work Environment Claim

To establish a *prima facie* case for a hostile work environment claim, Plaintiff must prove that "(1) she suffered intentional discrimination because of her [sex]; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [her]; (4) a reasonable person would have been

---

[103] *Id.*

[104] These events include: Reed's comment that Plaintiff "momm[ies]" and "bab[ies]" the employees; Reed's direction to avoid making non-management friends; Sink's decision not to meet with her; Sink's comment that she should be the "friendly face" of Berwick; and Weber's comment that it was "unheard of" to have a female on the plant floor. *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 1 (Plaintiff's Oct. 25, 2023 Dep. Transcript) at 123:12-20, 131:15-18, 161:6-10, 200:5-19; Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 2 (Plaintiff's Nov. 10, 2023 Dep. Transcript) at 161:6-10.

detrimentally affected by such discrimination; and (5) the existence of respondeat superior liability."[105]

### a.   Substantial Factor Prong

When evaluating this cause of action, the Court considers different conversations involving Turpin, Reed, Sink, and Bohannon to be the relevant behavior.[106] For the first element, Hricenak "'must show that her gender was a substantial factor leading to the discrimination and that her treatment would have been different were she a man.'"[107] "Verbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender."[108]

After reviewing the purportedly discriminatory conduct in a light most favorable to Plaintiff, the Court concludes that a reasonable juror could view seven comments and incidents as motivated by Hricenak's gender.[109] The remaining

---

[105] *Lignore v. Hosp. Univ. of Penn.*, No. Civ. A. 04-5735, 2006 WL 1804571, at *6 (E.D. Pa. June 28, 2006) (citing *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)).

[106] The Court is considering these incidents because they are either discussed by Defendant or identified by Hricenak in her Amended Complaint.

[107] *Koschoff v. Henderson*, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1485 (3d Cir. 1990)).

[108] *Id.* (citing *Oncale v. Sundowner Offshore Servs, Inc.*, 523 U.S. 75, 80 (1998)).

[109] These seven are: Sink's statement that Hricenak should be a "friendly face" in the office; Sink's decision to cancel a scheduled lunch with Plaintiff; Reed's statement that she "momm[ied]" and "bab[ied]" the shop employees; Reed's instruction to not socialize with non-management employees; Weber's comment that it is "unheard of" to have women on the shop floor; the incident where Turpin yelled at Hricenak to stop her and the leadman from consulting each other; and the confrontation with Turpin concerning the replacement employee. *See* Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 1 (Oct. 27, 2023 Dep. Transcript) at 123:12-20, 131:15-18, 161:6-10, 188:5-12, 200:5-19; Doc. 65

incidents identified by Plaintiff, particularly those involving Turpin, demonstrate perhaps poor emotional regulation but hardly a discriminatory animus.[110]

### b.     Severe or Pervasive

For the second prong, "the offending behavior must be sufficiently severe or pervasive to alter the victim's employment conditions and create an abusive environment."[111] To determine this, the Court must consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[112] "[O]ffhand comments[] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"[113]

It is clear from the record that the offensive conduct referenced here does not meet the level of severity required by Title VII.[114] The Court will therefore focus

---

(Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 2 (Plaintiff's Nov. 10, 2023 Dep. Transcript) at 44:19-46:11, 113:25-114:1.

[110] It also does not escape the Court's notice that Turpin, the main individual Plaintiff accuses of harassment, during the same period of time was "buddies" with Melanie Weber. Doc. 65 (Supplement: Plaintiff's Sept. 25, 2023 Dep. Transcript), Ex. 2 (Plaintiff's Nov. 10, 2023 Dep. Transcript) at 64:23-25. Nor did Turpin apparently treat the only other female employee at Berwick in a similar manner. *See id.* at 69:5-6. This behavior is more demonstrative of personal animosity than a discriminatory animus.

[111] *Troy v. State Corr. Inst. Pittsburgh*, No. 2:11-CV-1509, 2013 WL 5511265, at *7 (W.D. Pa. Oct. 4, 2013) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 131 (2004)).

[112] *Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 U.S. App. LEXIS 30087, 2023 WL 7486751, at *6 (3d Cir. 2023).

[113] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

[114] *See e.g.*, *Szyper v. Am. Med. Response Mid-Atlantic, Inc.*, No. 21-3272, 2023 U.S. App. LEXIS 6855, at *4-5 (3d Cir. 2023) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456,

on whether these actions were pervasive. "Harassment is 'pervasive' if incidents 'occur either in concert or with regularity.'"[115] In the matter at hand, only seven comments that a reasonable juror could infer were prompted by the Plaintiff's gender occurred over an approximately two year period.[116] While two of those incidents occurred over a six week period, this timeframe still does not satisfy the pervasiveness standard.[117] As a consequence, Mickey Truck Bodies' Motion for Summary Judgment is granted as to the hostile work environment claim.

### 4.    Punitive Damages

"Under Title VII, a plaintiff is allowed to seek punitive damages if they demonstrate that the employer acted with malice or reckless indifference to the plaintiff's federally protected rights."[118] "An employer's misconduct need not be 'egregious,' rather it must involve … 'knowledge that it may be acting in violation of federal law.'"[119] "Determining an employer's intent or knowledge for its

---

463-65 (6th Cir. 2000)) ("supervisor's offensive touching not severe enough to create hostile work environment.").

[115] *Goff v. Cummins Inc.*, Civ. A. No. 1:20-CV-2423, 2023 U.S. Dist. LEXIS 57596, at *7 (M.D. Pa. Mar. 31, 2023) (Conner, J.) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990)).

[116] *See e.g.*, *McCutchen v. Sunoco, Inc.*, No. 01-2788, 2002 U.S. Dist. LEXIS 15426 (E.D. Pa. Aug. 14, 2002), *aff'd* 80 F. App'x 287 (3d Cir 2003) ("A plaintiff cannot rely upon casual, isolated, or sporadic incidents to support her claim of hostile work environment harassment.").

[117] *See e.g.*, *Hayes v. Silvers, Langsam & Weitzman, P.C.*, 441 F. Supp. 3d 62, 68 (E.D. Pa. 2020) ("Hayes alleges she was regularly harassed and identifies at least *seven* incidents *within an eight week period*, as well as regular unwanted touching.").

[118] *Donnelly v. Capital Vision Servs., LLC*, 644 F. Supp. 3d 97, 112 (E.D. Pa. 2022).

[119] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999).

employment actions is a task best relegated to the factfinder."[120] Since Hricenak's Title VII sex discrimination claim survives and Defendant puts forward no evidence of its efforts to comply with Title VII, it seems appropriate then, to deny summary judgment on this issue.

## III.   CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part the Motion for Summary Judgment. Defendant's Motion to Strike is denied as moot.

An appropriate Order follows.


BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[120] *Johnson v. Fed. Express Corp.*, 9996 F. Supp. 2d 302, 322 (M.D. Pa. 2014) (Conner, J.) (citing *Hanes v. Columbia Gas of Pa. Nisource Co.*, No. 1:06-CV-0328, 2008 U.S. Dist. LEXIS 621672, at *9 (M.D. Pa. Aug. 15, 2008) (Conner, J); *Harry v. City of Phila.*, No. 03-661, 2004 U.S. Dist. LEXIS 11695, at *16 n.24 (E.D. Pa. June 18, 2004)).